**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

YOLANIS HERNANDEZ CARRASQUIL,
o/b/o Y.R.,                                                           Plaintiff,
     v.                                                                              5:14-CV-66
                                                                                    (LEK/ATB)

COMMISSIONER OF SOCIAL SECURITY,
                                           Defendant.
_____

HOWARD D. OLINSKY, ESQ., for Plaintiff
FERGUS J. KAISER, SPECIAL ASS'T. U.S. ATTORNEY for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

Plaintiff Yolanis Hernandez Carrasquil protectively filed[1] an application for Supplemental Security Income ("SSI") payments on behalf of her daughter, Y.R.,[2] on March 17, 2011, claiming disability beginning on that date. (Administrative Transcript

---

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. § 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

[2] Throughout this Report, the child on whose behalf this action was brought will be generally referred to as "the claimant" or by her initials "Y.R." Yolanis Hernandez Carrasquil, who commenced this action on behalf of her daughter, will generally be referred to as "the plaintiff."

("T.") at 109, 118). Plaintiff's application was initially denied on May 18, 2011 (T. 49), and she made a timely request for a hearing before an Administrative Law Judge ("ALJ") on June 1, 2011. (T. 72-74). The hearing, at which plaintiff appeared with Y.R., was conducted by video conference on July 31, 2012. (T. 31-47).

In a decision dated November 16, 2012, the ALJ found that Y.R. was not disabled. (T. 11-28). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 3, 2013. (T. 1-4).

## II. ISSUES IN CONTENTION

The plaintiff makes the following arguments:

(1) The ALJ erred in his determination that Y.R.'s impairments were not functionally equivalent to "the listings." (Pl.'s Br. at 9-13).

(2) The ALJ failed to properly assess Y.R.'s mother's credibility. (Pl.'s Br. at 13-14).

Defendant argues that the Commissioner's decision is supported by substantial evidence and the complaint should be dismissed. For the following reasons, this court agrees with defendant and will recommend dismissal of the complaint.

## III. FACTUAL OVERVIEW

The court will only briefly summarize the medical, educational, and other evidence, which is set forth at length in plaintiff's brief (Pl.'s Br. at 3-7) and in the ALJ's decision. (T. 17-20). Further relevant details are discussed below in the course of analyzing the issues disputed by the parties.

Claimant Y.R. is a female child, born on January 6, 2010. (T. 17). As of the date

2

of the administrative hearing on July 31, 2012, Y.R. was two years old. (T. 32). She lives with her mother, father, three brothers and one sister. (T. 42, 264). Y.R. was first evaluated for early intervention services in September 2010 after her treating physician noticed developmental delays, particularly in gross motor development. That evaluation concluded that Y.R.'s communication skills were in the below average range, and her combined gross and fine motor scores were one standard deviation below the mean on the Peabody Developmental Motor Scales-2 screening test ("PDMS-2"), but the evaluators did not recommend early intervention services. (T. 159).

Y.R. was assessed again on February 9, 2011, and deemed eligible for early intervention services because her gross and fine motor scores on PDMS-2 were at least two standard deviations below the mean. (T. 162). As part of these services, a physical therapist began home visits three times a week. (T. 38, 176-178). In subsequent evaluations, Y.R.'s gross and fine motor skills showed improvement, and physical therapy was reduced to twice a week. (T. 284). However, delays in Y.R. verbal communication skills prompted commencement of speech therapy in February 2012. (T. 40). As of the date of the administrative hearing, Y.R. remained eligible for early intervention services. She began receiving physical therapy and speech therapy in a classroom setting on July 3, 2012. (T. 286).

## IV. APPLICABLE LAW

### A. Disability Standard

An individual under the age of eighteen is disabled, and thus eligible for SSI

3

benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I). *See Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *3-4 (N.D.N.Y. Apr. 30, 2009) (discussing the standard for children's disability benefits). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity. . . ." 42 U.S.C. § 1382c(a)(3) (C)(ii).

The agency has developed a three-step process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then by statute and by regulation, the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3) (C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examination of whether he or she suffers from one or more medically determinable impairments that, either alone or in combination, are properly regarded as "severe," in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If the child is found to have a severe impairment, the Commissioner must then determine, at

4

the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1. *Id.* Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and the twelve-month durational requirement is satisfied, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

"Functional" equivalence must be examined only if it is determined that the claimant's impairment does not meet or *medically* equal the criteria for a listed impairment. Analysis of functionality involves considering how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established by finding an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain,

or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012)); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of

evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## V.     **THE ALJ'S DECISION**

As the first step in his analysis, the ALJ found that Y.R. had not engaged in any substantial gainful activity at any time relevant to his decision. (T. 17). The ALJ next found that Y.R.'s developmental delays in gross motor functioning, moderate cognitive delays, and moderate speech delays were severe impairments. (T. 17).

At the third step, the ALJ found that, despite Y.R.'s severe impairments, she did not have an impairment or a combination of impairments that "medically equal[ed]" an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1. (T. 17). The ALJ continued his analysis and found that Y.R.'s severe impairments did not "functionally equal[]" the severity of a Listed Impairment under the Regulations. (T. 17).

In making his functional equivalence determination, the ALJ considered the medical evidence and plaintiff's testimony. (T.18-24). The ALJ reviewed each domain in summary fashion, following a detailed analysis of Y.R.'s limitations. (T. 20-24). As part of this analysis, the ALJ gave "great weight" to Y.R.'s treating physician Dr. Shallaja Potdar, and consultative physician Dr. Kalyani Ganesh, because "their findings and opinions are consistent with the record as a whole and supported by the evidence of record." (T. 20). The ALJ also gave "significant weight" to the findings of the other examining counselors and physicians, as their conclusions were supported by the record. (T. 20).

Based upon his review of the evidence, the ALJ found that Y.R. had a marked limitation in the functional domain of moving about and manipulating objects. The ALJ based his findings on Y.R.'s PDM-2 score for gross muscle functioning; Y.R's low normal muscle tone in her lower body; and her demonstrated difficulties with

8

walking. (T.20). The ALJ concluded that while Y.R. suffered from significant limitation with regard to her ability to move about, the limitation was not extreme and Y.R. appeared to be improving with therapy. (T. 20).

The ALJ further concluded that Y.R. had a "less than marked" limitation in the functional domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. She had no limitation in the functional domains of caring for herself and health and physical well-being (T. 20-24). As to these domains, the ALJ found that Y.R.'s difficulties in communication had been characterized by her examiners as delays which could be addressed with therapy. He concluded that "the weight of the evidence does not support the notion that [Y.R.] will continue to experience significant delays in these areas of functioning that will prevent her from carrying out age appropriate activities as she ages." (T. 20).

The ALJ also found that plaintiff's statements as to the intensity, persistence, and limiting effects of Y.R.'s impairments were not credible "to the extent that they are inconsistent with finding that [Y.R.] does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below." (T. 16).

## VI. ANALYSIS

Plaintiff argues that the ALJ's determination of functional equivalence[3] is not supported by substantial evidence due to an improper evaluation of Y.R's limitations in the domains of acquiring and using information and interacting and relating with

---

[3] Plaintiff does not argue that Y.R.'s impairments medically equal a listed impairment.

others. (Pl.'s Br. at 9-13). The plaintiff also argues that the ALJ failed to properly assess plaintiff's credibility. (Pl.'s Br. at 13-14).

### A. Functional Domains

As discussed above, if the claimant's condition does not meet or medically equal a specifically listed impairment, the ALJ must determine whether claimant has an impairment or combination of impairments that functionally equals a listing. The functional equivalence determination is based upon an analysis of the six domains listed above. 20 C.F.R. § 416.926a(b)(1). Marked limitations in more than one domain would functionally equal the listings and require a finding that the claimant is disabled. 20 C.F.R. § 416.926a(d).

#### 1. Acquiring and Using Information

In assessing the domain relating to acquiring and using information, the ALJ must consider how well a child acquires or learns information, and how well she can use the information she has learned. 20 C.F.R. § 416.926a(g). An older infant such as Y.R. (*i.e.* at least one, but younger than three) should be able to learn how objects go together in different ways during play, and learn through pretend-play that actions can represent real things and words are symbols or names for real things such as toys, people, places and activities. At this age, the child should refer to herself and things around her by pointing and eventually by naming. She should form concepts and solve simple problems through purposeful experimentation, imitation, constructive play and pretend-play activities. The child should also begin to respond to increasingly complex instructions and questions, and to produce an increasing number of words and

grammatically correct simple sentences and questions. 20 C.F.R. § 416.926a(g)(2)(ii). The applicable regulations provide general examples of limited functioning with respect to this domain, but these have little direct applicability to a two year old child. For example, a child might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and has difficulty explaining what he or she means. 20 C.F.R. § 416.926a(g)(3).

In this case, the ALJ marshaled support for his finding of a less than marked limitation in this domain, but he also discussed the contrary evidence, including the September 17, 2010 evaluation by Donna Owens, P.T., and Martha Rodriguez, M.S. Ed. This report, entitled "Early Intervention Bilingual Core Evaluation," noted that Y.R. was not making vowel or consonant sounds as of seven months of age. (T. 156). The ALJ also cited the February 9, 2011 Evaluation Report by Jill Gillette, D.P.T., and Tara Pienkowski, M.S. Spec. Ed., of Interactive Therapy Group, which found that Y.R. exhibited "moderate" delays in her adaptive functioning. (T. 194). The ALJ also expressly considered the February 27, 2012 early intervention records from the Onondaga County Health Department which showed that Y.R. had a score at least two standard deviations below the mean on the Preschool Language Scale for communication. (T. 217-19). Plaintiff places great emphasis on this February 2012 test score. (Pl.'s Br. at 12-13). However, the ALJ may not consider any single piece of evidence in isolation, and may not rely on test scores alone in determining whether a

11

child is disabled. 20 C.F.R. 416.926a(e)(1)(i); 20 C.F.R. 416.926a(e)(2)(iii).

Consistent with that principle, and notwithstanding Y.R.'s difficulties in communication, the ALJ concluded that "[Y.R.'s] examiners do not opine that [Y.R.] is incapable of functioning, only that she is delayed. Similarly, rather than limiting [Y.R.'s] activities, they encourage participation in therapy." (T. 20). The record evidence relied upon by the ALJ supports that conclusion. For example, during the September 17, 2010 evaluation when Y.R. was seven months old, Y.R. would turn her head when someone spoke, was "social and engaging," sat on her mother's lap and was "curious and attentive." (T.157). During this exam, which included a review of Y.R.'s "ability to attend, remember, plan purposefully, make decisions, and discriminate," Y.R. demonstrated skills "within a typical range for her age in the adaptive and cognitive domains." (T. 159). While her communication skills were in the below average range, her social emotional skills were in the above average range. (T.159). Similarly, in the February 9, 2011 Evaluation Report, Y.R. received below average scores for gross motor skills, but was found average cognitively, average social-emotionally, and screened competent for fine motor and speech language skills. (T. 194).

As stated above, "severe" impairments are those that cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. Having a severe impairment or impairments is only one part of the analysis. In this case, the ALJ appropriately considered the record as a whole before reaching a conclusion as to the extent of Y.R.'s limitations in the domain

of acquiring and using information. The ALJ looked both at Y.R.'s weaknesses, as well as her strengths, when determining that she had less than a "marked" impairment in this domain. *See, e.g., Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *6-7 (N.D.N.Y. Apr. 30, 2009) (upholding an ALJ's finding of a less than marked limitation with respect to acquiring and using information, notwithstanding the conclusion of claimant's teachers that he had some "serious" and "very serious" cognitive limitations, because it was supported by substantial evidence from educational records, standardized testing, and the opinion of claimant's treating psychiatrist); *Torres v. Commissioner*, 09 CV 59, 2010 WL 2674543, at *7 (E.D.N.Y. June 30, 2010) (upholding Commissioner's finding that claimant, who received some special education instruction and had a low average IQ score that fell within two standard deviations of the mean, had less than marked limitations in acquiring and using information).

Based upon the record evidence relied upon by the ALJ, and this court's review of the record, the ALJ's determination that Y.R. had a less than marked limitation in the functional domain of acquiring and using information was supported by substantial evidence.

### 2. Interacting and Relating With Others

In this domain, the Commissioner considers the child's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). The regulations

provide that an older infant or toddler should begin to separate from their caregivers, be able to express emotions and respond to the feelings of others. The child should begin initiating and maintaining interactions with adults, but also show interest in, then play alongside and eventually interact with other children of the same age. The child should be able to spontaneously communicate her wishes or needs, first by using gestures, and eventually by speaking words clearly enough that people who know her can usually understand what she says. 20 C.F.R. § 416.926a(i)(2)(ii).

The regulations provide general examples of limited functioning with respect to this domain. A child might have limited functioning if he or she does not reach out to be picked up and held by a care giver; has no close friends; avoids or withdraws from people he or she knows, or is overly anxious or fearful of meeting new people or trying new experiences; has difficulty playing games or sports with rules; has difficulty communicating with others or in asking others for assistance; or has difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a (i)(3).

The ALJ found that Y.R. had a less than marked limitation in her ability to interact and relate with others. As described above, the ALJ cited reports which showed that Y.R. was "social and engaging" during her evaluation, had above average social and emotional scores, and related in an age appropriate manner. (T. 157, 182). The ALJ also cited the examiners' comments that Y.R. "liked being around others, interacted by playing, cooing, smiling, cuddling, and was starting to show separation anxiety from her mother." (T. 19, 157-59).

Other record evidence supports the ALJ's conclusion that Y.R. had less than

marked limitations in this domain, despite the need for speech therapy. For example, the March 15, 2011 Evaluation Report by Jill Gillette and Tara Pienkowski of the Interactive Therapy Group stated that Y.R. "showed good attention for the entire session and was easily engaged and interactive with both clinicians present for this evaluation. Ms. Hernandez-Carrasquillo reported that the skills observed during this assessment were consistent with [Y.R's] daily skills." (T. 265). Likewise, while Y.R. remained a "very shy and quiet little girl," a July 26, 2012 Development Progress Report submitted to Onondaga County noted that Y.R. was beginning to use a few words during individual shared book-reading activities, could transition between classroom activities, enjoyed make-believe play, and would smile and make eye contact with her caregivers. (T. 288).

Based upon the record evidence relied upon by the ALJ and this court's review of the record, the ALJ's determination that Y.R. had a less than marked limitation in the functional domain of interacting and relating to others was supported by substantial evidence.

### B. Credibility Assessment

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the

15

substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function. 20 C.F.R. § 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3).

When the claimant is a child, the ALJ is free to accept or reject the testimony of the child's parent. *Williams*, 859 F.2d at 260. If the child is unable to adequately describe his symptoms, the ALJ will accept the description provided by the testimony

of the person most familiar with the child's condition, such as a parent. *Hamedallah ex rel. E.B. v. Astrue*, No. 3:11-CV-939, 2012 WL 2403518, at *16 (N.D.N.Y. June 25, 2012) (citing *Jefferson v. Barnhart*, 64 F. App'x 136, 140 (10th Cir. 2003)). However, the regulations discussing "symptoms" specifically state that "[y]our statements (or those of another person) alone, . . . are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 416.928(a). The ALJ must make a specific findings regarding the parent's credibility as if the child were testifying himself. *Id. See also Brummett ex rel. L.R. v. Astrue*, No. 5:10-CV-384, 2012 WL 432099, at *6-7 (N.D.N.Y Feb. 10, 2012) (evaluating credibility of claimant's mother). The determination must be sufficiently specific to make "clear" the weight afforded to the testimony and the reasons for that weight. SSR 96-7p, 61 Fed. Reg. 34483, 34484 (July 2, 1996). A strong indication of credibility of an individual's statements is their consistency, "both internally and with other information in the case record." *Hamedallah*, 2012 WL 2403518, at *17 (citing SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996)).

In this case, the ALJ reviewed plaintiff's testimony regarding Y.R.'s developmental delays and concluded that after considering all of the record evidence, plaintiff's statements were not credible to the extent that they were "inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below." (T. 18). Plaintiff argues that although the "reasons explained below" were supposed to be the reasons for determining that plaintiff's statements were not credible, the ALJ never applied the

seven regulatory factors and thus failed to properly assess plaintiff's credibility. (Pl.'s Br. at 14). However, the court interprets[4] the ALJ's statement as referring to other evidence supporting his findings, and that evidence, discussed further below, would, in turn, support his finding that plaintiff's testimony was not credible to the extent that she claimed more serious limitations. *See e.g. Lanzo ex rel. J.I.C. v. Astrue*, 10-CV-271S, 2012 WL 838921, at *6 (W.D.N.Y. Mar. 12, 2012) (upholding ALJ's finding that mother's testimony lacked credibility when inconsistent with the clinical evidence in the record).

Plaintiff testified that, at the time of the hearing, Y.R. could not jump, balance or use stairs. (T. 39). The plaintiff testified that Y.R. required assistance with language, and only used individual words and small sentences. She testified that Y.R. had been receiving speech therapy for about five months as of the date of the hearing. (T. 39). The plaintiff also testified that Y.R. often has tantrums, on average every two hours, and became frustrated when she cannot do what her older brothers and sisters can do, such as jumping rope. (T. 41).

The focus of the ALJ's credibility determination arose from conflicts concerning conclusions regarding Y.R.'s developmental progress. At the hearing, plaintiff testified that she had noticed improvements in Y.R.'s movements since commencing physical therapy, but that the child did not know how to go up or down stairs, could not jump, and fell when she tried to walk or run short distances. (T. 39). The record

---

[4] The court also notes that the factors set out in 20 C.F.R. § 416.929(c)(3) are more readily applicable to the credibility assessment of a claimant's testimony, rather than a parent or caregiver testifying on behalf of a child.

evidence suggests that Y.R.'s motor skills were improving in each of these areas. For example, the January 4, 2012 Developmental Progress Report prepared by Children's Therapy Network and the July 30, 2012 Developmental Progress Report from Hear 2 Learn noted that Y.R. was making progress with stair negotiation, jumping skills, and running skills. (T. 276, 293). Likewise, although plaintiff testified that she had not noticed any improvements in the five months that Y.R. had been in speech therapy, the record, including the January and July Development Progress Reports, showed Y.R.'s improvement in the functional domains of acquiring and using information and interacting and relating to others since Y.R. began early intervention programs, including speech therapy. (T. 274-294). While Y.R.'s shyness and reluctance to communicate remained a concern in July 2012, the child showed improvement in following instructions, receptive vocabulary, and was beginning to show more spontaneous use of language as she became more comfortable in the new classroom environment. (T. 286).

An ALJ's assessment of a parent's credibility may be brief so long as, in the context of the case, it is sufficient. *Lanzo*, 2012 WL 838921 at *6. In this case, the ALJ appropriately compared the plaintiff's testimony to the clinical evidence in the record and concluded that, to the extent that the it conflicted with the medical evidence, the testimony was not credible. Therefore, this court finds that the ALJ's assessment of plaintiff's credibility was supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the

19

plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.  Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

March 27, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge